Joel and Clara Mae Newton v. Commissioner.
Newton v. Commissioner
Docket No. 1096-69.
United States Tax Court
T.C. Memo 1970-103; 1970 Tax Ct. Memo LEXIS 255; 29 T.C.M. (CCH) 473; T.C.M. (RIA) 70103; May 6, 1970, Filed. *255 Joel Newton, pro se, 1915 Arlington Ave., St. Louis, Mo., Charles B. Wolfe, Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies and additions to tax against the petitioners: Addition to Tax
Sec. 6653(a),
Taxable Year
Deficiency
I.R.C. 1954
1965
$816.17
$40.81
1966
792.00
39.60
The issues presented for decisions are (1) whether respondent may reconstruct a barber's income by using a towel-count method, (2) whether petitioners' income for 1965 and 1966 was understated, and (3) whether any part of the underpayment of tax was due to negligence or intentional disregard of rules and regulations under section 6653(a). [1]
Findings of Fact Joel and Clara Mae Newton (herein called petitioners) are husband and wife who filed their joint Federal income tax returns for 1965 and 1966 with the district director of internal revenue, St. Louis, Missouri. At the time they filed their petition herein they resided in St. Louis, Missouri. *256 Joel Newton shall be referred to as the petitioner. Petitioner has operated a barber shop since 1936. Prior to that he had been moderately successful at tenant-farming. In 1965 and 1966 petitioner's business, known as the Tuxedo Barber Shop, was located in a run-down neighborhood which was undergoing redevelopment. He kept the shop open 6 days per week, 52 weeks per year. Petitioner has had a very limited 474 education. He has little or no knowledge of bookkeeping. In 1965 petitioner was told by a revenue agent that he must keep a daily record of his receipts from the operation of his barber shop. Prior to July 26, 1965, he had kept on a permanent basis only weekly or monthly totals. In a letter (Form 7031) dated September 9, 1965, petitioner was informed that he must maintain "such permanent books of account and records, including invoices, vouchers, bills, tapes, receipts, etc., as will enable you to make a return of your true income * * *." His specific shortcoming was that "[daily] cash receipts were not recorded in permanent books of account." On July 26, 1965, petitioner began keeping a permanent record of his daily receipts. In 1968, pursuant to a "follow-up procedure, *257 " a revenue agent began an audit of petitioner's 1965 and 1966 returns. He visited petitioner's barber shop on two occasions. Finding petitioner's records of gross receipts inadequate, the revenue agent obtained a record of petitioner's laundry receipts. On the assumption that each towel laundered represented one haircut, the agent determined that petitioner's gross income in 1965 and 1966 was $1.75 multiplied by the 9181 towels laundered in the two years, or $8,219.75 in 1965 and $7,852.25 in 1966. This was carried over into the notice of deficiencies. In 1965 petitioner charged $1.25 for an adult's haircut, $.75 for a child's haircut, and $.65 for a shave. In 1966 he charged $1.50 for an adult, $1.00 for a child, and $.70 for a shave. He normally used one towel per haircut, and three towels for a shave. Petitioner gave an average of one shave per day, and about three free haircuts per week to persons unable to pay. About 70 percent of his customers were adults. Petitioner normally used one towel per day for washing his hands. For the years 1965 and 1966 petitioner reported on Schedule C of his Federal income tax returns gross receipts of $3,691.75 and $4,065.85, respectively, *258 from the operation of the Tuxedo Barber Shop. Petitioner is a poor mathematician; his daily records disclose actual receipts of $3,179.40 in 1965 and $4,445.90 in 1966, excluding tips. Except for tips, these daily records accurately reflect his gross receipts from the barber shop. Petitioner received tip income of $225 in 1965 and $225 in 1966. He did not realize that his tips should have been reported as taxable income. Opinion It is well settled that "where a taxpayer keeps no books or records, or his records are inadequate, the Commissioner is authorized to compute income by whatever method will, in his opinion, clearly reflect the taxpayer's income. . The Commissioner may even undertake to reconstruct income when the taxpayer keeps books and records which support his income tax return as filed. (C.A. 5, 1961). He is not bound to accept a taxpayer's return, or his books, at face value. . The method used by respondent to reconstruct income in this case involved multiplying the number of towels used by the average *259 price of a haircut. This method is not arbitrary or unreasonable. "It is enough that in logic and in the light of normal business experience the method used provides a fair and rational measure of income." (C.A. 3, 1962). In the Agnellino case the Court approved a "sheet count" method for reconstructing motel income. The "towel count" method has been used to reconstruct the income of a bordello. 57 , affirmed per curiam (C.A. 5, 1963). The towel count method errs on the high side because a customer may use more than one towel. It differs from the sheet count method, which errs in favor of the taxpayer. . Nonetheless the towel count method is reasonably accurate, and particularly useful in detecting "skimming" in a cash business of this type. If the towel count method is to be of value in determining gross income, it must be used intelligently. The notice of deficiencies, based on 9181 towels in the two years and an average of $1.75 per haircut, bore no relationship to petitioner's schedule *260 of prices. At trial, and particularly on brief, respondent's astute and fair-minded counsel retreated to a much more reasonable position, namely: 475 1965
Price
Towels
Receipts
Adults
$1.25
2,974
$3,717.50
Children
.75
991
743.25
Shaves
.65
312
224.00[sic]
Washing 313
4,590
$4,684.75
1966
Price
Towels
Receipts
Adults
$1.50
2,974
$4,461.00
Children
1.00
991
991.00
Shaves
.70
312
218.40
Washing 313
4,590
$5,670.40
We think these calculations require three additional revisions. Petitioner testified that a shave required three towels, whereas respondent allowed only one. At a shave per day, petitioner would have used 936 towels for shaving. Secondly, petitioner gave about three free haircuts per week, or about 156 per year. Thirdly, we have found that 70 percent of petitioner's haircuts were given to adults, 30 percent to children, whereas respondent assumed a 75%-25% mix. With these adjustments, we have reconstructed petitioner's gross receipts as follows: 1965
Price
Towels
Receipts
Adults
$1.25
2,339
$2,923.75
Children
.75
1,002
751.50
Shaves
.65
936
202.80
Washing 313
4,590
$3,878.05 *02Less 156 X $1.25*
195.00
Total gross receipts
$3,683.05
1966
Price
Towels
Receipts
Adults
$1.50
2,339
$3,508.50
Children
1.00
1,002
1,002.00
Shaves
.70
936
218.40
Washing 313
4,590
$4,728.90
Less 156 X $1.50 234.00
Total gross receipts
$4,494.90
*261 The 1965 gross receipts figure is less than petitioner's daily receipt records by $36.35 while the 1966 gross receipts figure exceeds his daily records by $49. Allowing for possible errors in our method, we think that this reconstruction only confirms the accuracy of petitioner's daily receipt records. Our findings of fact so reflect. On brief respondent argues that petitioner's records were not contemporaneous documents, that all of the figures had been inscribed at one time, and that the 1965 records had been made in 1966. Petitioner, who appeared pro se, filed no brief, and has had no chance to reply to these arguments. Examining petitioner's rather crude records, we are inclined to agree that they are not contemporaneous. But petitioner has never been instructed in accounting or bookkeeping, and although he reads well enough, he writes and spells with difficulty. The records in question were entered freehand on the dogeared pages of a thin spiral notebook pad. They appear to be an attempt to create order from a haphazard record system. We may reasonably suppose that they were created from an even more informal collection of records. The process of transcribing scattered figures *262 to a permanent book is not unusual, and we think it is of no consequence that these records are not contemporaneous. Respondent's towel count has demonstrated their comparative accuracy. We have discounted the testimony of the revenue agent who claimed that he observed petitioner using one towel on more than one customer. Both local law and necessity would insure only one customer per towel. Any barber who stuffed a towel full of hair and shaving cream down the neck of a second customer would certainly not be in business for long. We think the revenue agent may have been confused by the common practice of wiping the straight razor with a used towel. Petitioner candidly admitted that he had not reported his tip income in either year. He said he thought tips were gifts rather than earned income. Because the tipping of barbers is not yet a universal custom, and because petitioner served a poor area, we have estimated that only about onethird of his adult customers (haircut and/or shave) tipped him an average of 25 cents. Allowing for an overlap of shave and haircut, we estimate his tip income at $225 per year. (C.A. 2, 1930). Petitioner *263 impressed us as an independent, hard-working and honest man. In our opinion his return was intended to be accurate, and any understatement of income was due solely to mathematical errors and, in his circumstances, excusable misunderstanding of the law. Any addition to tax for negligence or intentional disregard of the rules and regulations is thus inappropriate. . Nor do we think petitioner ignored respondent's instructions to keep adequate records. He seems to have complied to the best of his ability. To reflect the conclusions reached herein, Decision will be entered under Rule 50. 476 Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩